May it please the Court, my name is John Monson. I am the Court-Appointed Pro Bono Counsel for the Appellant Plaintiff Barbara Stewart-Robinson in this appeal. I'd like to preserve three minutes of my time for rebuttal. Your Honors, I'd like to begin by addressing the primary issue on this appeal, which is whether the District Court erred by granting summary judgment on Ms. Stewart-Robinson's ADA and Rehabilitation Act claims, and then hopefully if I have time, move on to the 11th Amendment immunity issues that are presented with the District Court's dismissal of her state law claims and due process claims. As the record makes clear, in January 2010, Green River Community College placed Ms. Stewart-Robinson on disciplinary suspension as a result of what they characterized as disruptive and aggressive behavior that she had towards another student in the main campus dining hall. Ms. Stewart-Robinson suffers from a bipolar manic depressive disorder. Is it undisputed that she suffers from this disorder? It is undisputed in the summary judgment papers for the purposes of summary judgment alone. The other side reserves the right to argue at trial should there be a trial. For the moment it is undisputed. For the moment and for the purposes of summary judgment, Green River conceded that she had a qualifying disability under the ADA and that it knew of that disability at the time that it placed her on disciplinary suspension in January 2010. Now, she suffers not only from the bipolar manic depressive disorder, but the record reflects that the symptoms of those disorders include, quote, irate behavior, end quote, end quote, hyper-verbosity, circumstantial thinking, and irrationality. Those are the words that were used by the state of Washington in a forensic report that Ms. Stewart-Robinson submitted on her behalf as well as she could as a pro se plaintiff establishing the record of her disability. I have one other question in light of that. Is it also stipulated that the community college knew of her disability for purpose, I mean of her bipolar circumstance for purposes of the summary judgment? I'll leave it to Green River's counsel to explain the extent of it. As I read the papers, they stipulated for the purposes of summary judgment that she had a qualifying disability and that Green River knew of that disability at the time it suspended her. So both, and I think that's clear from the briefing papers that have been submitted on this appeal. And I think actually the briefing papers on this issue have substantially narrowed the dispute between the parties. Neither party really disputes what the case law is at this point. The parties concede that under this court's precedent in Humphrey v. Memorial Hospital, Darkey v. Curry County, and most recently in the Gambini case, that under the ADA, for the purposes of summary judgment, it is impermissible to discriminate on the basis of conduct caused by a disability as well as the disability itself. Really the dispute between the parties is framed by the briefs on this appeal is an evidentiary issue. It's what did Ms. Stewart-Robinson, a pro se plaintiff, present enough evidence at summary judgment to raise a tribal issue on whether her symptoms were linked to her, quote, disorderly conduct in January of 2012. 2010, excuse me. And I think if you look at the record, albeit not as detailed as the record in, for example, Gambini, which was a case involving a trial that had gone through to verdict, there's clearly enough evidence for a rational jury to conclude that there is a link between those symptoms of her bipolar disorder and the conduct that occurred in January 2010, including the- And that is the ultimate question for us. That is the ultimate question, whether there is a tribal issue on the causal link between her disorder and the conduct in January 2010. And to take it more specifically, if to the extent that evidence exists, we have to find it in that report. I would not limit it to that report. There are other portions of the record that identify symptoms of her disorder, including her own declaration which she submitted in connection with the motion for summary judgment in which she characterizes symptoms of her disorder as irate behavior. And she also included a letter, the date that this conduct, this event occurred at the college, in which she submitted a handwritten letter to the college in which she claimed that the college told her that their education would be terminated because of her, quote, irate behavior. Now, I understand the Green River's argument as these are conclusory allegations. They're not allegations. They're part of the record. And as this court said in U.S. v. Shumway and SEC v. Fan, because a declaration is self-serving doesn't make it not cognizable for the purposes of establishing a genuine issue of material fact for summary judgment purposes. Do we have anything in the record that's sort of more generic in describing bipolar and classic symptoms of bipolar and so on? No, Your Honor. Admittedly, no. And I think, practically speaking, I think the reason for that is that- She was pro se. Yeah, is even a cursory glance at her pleadings show not only was she pro se, but for the purposes of this appeal, Green River has admitted she had a pretty significant mental disorder. And I think you can tell that by looking at her pleadings. She had a very difficult time presenting her arguments. And, you know, I understand that was probably a difficult issue for Green River's counsel to deal with in court. I mean, the reason I ask this, in part, is her behavior is classic bipolar behavior. Anybody who understands bipolar behavior, read about bipolar behavior, will recognize this as entirely consistent with bipolar behavior. I would agree, Your Honor. And I think, you know, there are obviously- And so my question, in a way, is how much does she have to put into the record to give us, okay, what is classic bipolar behavior beyond what she's done? So I guess this is going to be a question for Green River. Yeah, okay. Yeah, and I think it's a fair question, Your Honor. And I think there are obviously certain mental disorders that are more commonly known what the symptoms are. The example that Green River raised, which I think is a good example, in their papers was narcolepsy. And they said, well, what would happen if you had a student with narcolepsy who fell asleep and then was suspended as a result of that conduct? Well, I think in that instance, narcolepsy is a pretty generally understood condition. A jury would be free to conclude that, you know, if a suspension resulted from that student falling asleep during class, that a rational jury could find, even without a general description of the condition in the record, that there was a causal link between the two. So assume there's enough on the issue of a nexus between her irate behavior and her mental disorder, enough evidence for a jury to infer that the irate outburst was, in fact, a manifestation and triggered by her disability. Then the issue is, has she raised accommodation issues? Or is this just she's saying they can't suspend? They only suspended her, didn't they? They didn't terminate her. They suspended her for an entire academic quarter. A quarter, yeah. You said terminated for irate behavior, but it was suspended. So is that all this case is about, whether she gets a jury on that? Or is there still room in the district court for litigating over a failure to accommodate, engage in the interactive process and so on? Yes. I think there clearly is room for that argument. And the way it was presented in the briefs was as an alternative argument because it was never presented in the context of the argument at the district court. But clearly under this Court's precedent in Humphrey, that is an issue. And she raised it as best she could in her declaration. She cited reasonable accommodation in the first paragraph of her complaint. She mentioned reasonable accommodation twice. But there's nothing in the record that suggested during the period of her either pre- or post-suspension that the subject of, as a matter of fact, accommodation came up. I would agree with that. Other than the defendant's willingness to discuss in the future arriving at some sort of an understanding or arrangement that would address her problems and allow her to resume her academic studies. Right. And what Humphrey said was that the two trigger points for triggering that mandatory obligation to engage in the interactive process were that the employer or student in this case has a qualifying disability, which Green River conceded, and that they knew at the time of the correct time period that she had a disability or on notice that her condition was serious enough to raise a potential reasonable accommodation question. And so that, I mean, by Green River's own concession and summary judgment in this case, that mandatory obligation was triggered. And that obligation is to engage in an interactive process that requires more than just saying, as they did in the written documentation of Ms. Stewart-Robinson at the time, you know, if you come to us, you give us medical documentation, which she did, we will consider reasonable accommodation. What that obligation requires is that you engage in a formal back-and-forth process. I think we understand that.  And you acknowledged that counsel for the college had some difficulty dealing with this, as I'm sure the district court did. Has anybody now ‑‑ she's normally had counsel until you agreed to be pro bono. Is that correct? That is correct. So has there been any thought or effort made to consider mediating a resolution of this case? Your Honor, there was, you know, the automatic referral to the mediation program. I don't want to get into privileged conversations with my client. No, I don't want you to. But that effort was made. It's not enough. And I think the mediation judge agreed that this was not a case that he felt was ‑‑ Okay. Fine. That's all I needed to know. That's too bad, because I'm sympathetic to both sides in this case. I mean, I'm sympathetic to her, but, I mean, the college in this situation is in a tough spot. And I understand that. And I've dealt with a lot of pro se parties, Your Honor, and it's not easy for either side. That's why I think it's beneficial to have appointed counsel on cases like this. We appreciate having pro bono counsel. Do we ever. But that said, I think, and maybe this is a segue into the 11th Amendment immunity issues, is that, you know, that said, you know, there are procedures that the state goes through in attacking a complaint. And in this case, the state conceded the existence of qualified disability and the existence that, I mean, and the new of that disability at the time of this conduct. It didn't have to do that. And I think really what this case presents is buyer's remorse on Green River's part for conceding those two issues, because they didn't have to. And I think, you know, what they've raised in their briefs is this issue about, well, there's these big public policy concerns about what I'm asking the court to do is somehow accepting a per se rule that any time someone with bipolar disorder engages in an outburst, that it's per se disability discrimination to take some adverse action on behalf of that. And the Gambini court actually addressed that very issue after its opinion came out. There was a petition for rehearing en banc. Amici presented some of those arguments in briefing, and the court modified its order by addressing that public policy point and saying, look, you know, the ADA requires extra protection for disabled people that isn't necessarily the same as non-disabled people. And the state, or in this case the community college, retains the right to either argue that she doesn't have a qualified disability or that she wasn't capable of being reasonably accommodated. That just wasn't an argument that was presented. Time runs entirely. Could you address the 11th Amendment argument with respect to the due process claim? Yes, Your Honor. And I think that you frame it in the due process claim, but I think it's important to start at the beginning because there is some confusion in the record about when the arguments were raised. Ms. Stewart-Robinson filed her complaint in January shortly after this incident. In the initial complaint, she included a half a page of state law claims, admittedly no due process claim. State law claims, which were the claims that the district court eventually dismissed on 11th Amendment grounds. The Green River has argued in response to, you know, the 11th Amendment waiver argument on this appeal, that it would have been improper to raise the 11th Amendment at that early stage. Well, that's clearly not true. The state law claims were in there, and the state law claims were subject to 11th Amendment immunity. Now, the case then proceeded on. Green River engaged in discovery conversations with Ms. Stewart-Robinson. It consented to magistrate judge jurisdiction over the case. And then Ms. Stewart-Robinson filed a motion for summary judgment in which she raised the specter of a 1983 claim on due process grounds. In response to that motion for summary judgment, the Green River didn't raise an 11th Amendment immunity argument until a month later when it filed its own cross motion for summary judgment, at which point it then raised this 11th Amendment immunity argument. And still, at that point, never raised it with respect to the state law claims. I'm focusing only on due process for the moment. Now, I can see two arguments coming out of what you just said. One, because there were arguments as to which this 11th Amendment argument or defense could have been raised, there's the state law claims. Not having raised that as a defense then, the state has thereby consented to litigation on the merits for any claim that might be raised thereafter, not limited to state law claims. I can see that argument. Your other argument might be, well, waiting a month is too long. I think both of those are true. And on the first point, it's – I disagree with both. Well, the first argument, the court – I mean, I don't think the case law just admittedly is clear on this point. But the court did raise a somewhat similar issue in Ray Lazar, which was a bankruptcy case in which the court said, by accepting jurisdiction on one claim, you're accepting jurisdiction on other claims that are on the same transaction. That's the removal case. That's the removal case. But I readily admit the due process claim is a weaker argument. It is. As to the 11th Amendment. As to the 11th Amendment. But the fact is that the state was on notice of an 11th Amendment immunity issue from the very beginning of the case vis-à-vis the state law claims. Thank you. Let's hear from the state. We've taken you up to your time, but we will give you a chance to respond. Thank you, Your Honor. It's the state, the college, right? Pardon? Yeah. Good morning, and may it please the Court. John Maroney for Green River. Thank you for the opportunity to argue in the Ninth Circuit. The record here does not establish a causal link between Ms. Robinson's bipolar disorder and her behaviors on January 6, 2010. And so the issue before the Court is whether Ms. Robinson may rely on stereotypes in lieu of actual evidence. And the answer to that question is no. And the 11th Amendment bars Ms. Robinson's nondiscrimination claims. First, I would like to point out, and I know Judge Fletcher, Your Honor, raised a question about bipolar disorder, and this is arguably symptomatic. It's generally understood. But I would point to the DSM-IV, which I have a copy with me, that says that bipolar disorder is treatable. You can actually take measures and medications, as was the case in Gambini, to control your disorder. And so to just assume and presume that because someone with bipolar has an outburst on a given day is a stereotypical assumption, it's a leap of faith to say that X causes Y. Yeah, but that's – let's step back a moment to the question I asked earlier about your position on whether the college knew, for purposes of summary judgment only, knew of her disorder. Do we assume that that's the case? That was a yes. Okay, so stereotypes is just another word for bipolar disorder generally manifests itself in a variety of ways. You can go on Google and any disease that you're saying, well, these are the kinds of symptoms you look for for heart attack or stroke or cancer or whatever, bipolar. So irate behavior is one. So if the community college knows that she does have this disability, to ignore the possibility that it is a manifestation because if she's not taking her meds and they don't, people don't always take their meds, then why wouldn't the college be on notice that it is 50-50, 60-40, 30-70, whatever, that what her behavior is in a manifestation of her disease and approach it on that basis? And if you think they did, then I'd like to hear about it. In excerpts of Record 36, that is the letter from Mr. Malroy that suspended Ms. Robinson. And in that same letter he says, you've exhibited bad behaviors. She's threatened a student, called another student retarded, threatened a security officer, had to be escorted off campus by police. But then in the very same paragraph says, we invite you to present medical documentation with us so we can work on a reasonable accommodation. That's in the record. That is Green River's attempts to move forward on an accommodation process. So all we are asking it – When did the psychiatric report get presented to the college, if ever? It was several days later. I don't have the exact – But she did send something in. She sent a report to Green River. There's no attention this person or attention that person. She sent a report to Green River. Right. Yes, after the suspension. Yeah. And so – You said it was in the same letter, right? Invitation to talk. Correct. And here's your punishment and if you've got anything to show us. And she provided a forensic psychiatric report. Correct. But what I think Your Honor is asking Green River to do is just presume that her behavior – Not to presume. No, not to presume at all. She did what you asked. I'm talking about the behavioral – the outburst on January 6th. So – Wait a minute. I'm not asking you to presume anything. I was asking your client, in knowing that she has bipolar disorder and that if somebody's not on their meds, the symptoms of bipolar include irate behavior, outbursts. So there's a big red flag there, or at least a yellow flag, that says there is a possibility, not just a speculation or stereotype, that her outburst is associated with her known mental disorder. And, in fact, apparently he made that connection when he wrote the letter. He said, if you have something, give it to us. And she did. She sent in a forensic report that, in fact, supports that she has it and that she can act irrationally if not under medication. So why isn't, in that posture, there's enough to go to the jury to say, you know, she made a connection. She made enough to go to a jury to – so we're not debating it here in the Ninth Circuit. Yes, three things. First, that evaluation does not have a diagnosis whatsoever. That evaluation says that she has some grandiose thinking and hyperverbosity, but it doesn't say she's susceptible to violent outbursts. So that's number one. Number two, we are at the summary judgment stage. It's Ms. Robinson's burden to produce evidence in order to meet her prima facie demonstration to get to a jury. Well, my problem with this piece of the case – I mean, my problem with the case is that we have the case at all. I'm very sorry that this was not settled a long time ago. I understand some of the obstacles to settlement that would have existed given the situation and so on. But my problem with this particular piece of the case is that, at some point, common sense intrudes. And we all know, roughly speaking, what the symptoms of bipolar are. We all know that the symptoms that she exhibited are consistent with bipolar. And we can sort of parse it and kind of shave it away and so on with lawyer arguments, but the common sense is just right there in front of us. And I would say that the common sense is that we have a community college that has an obligation to protect the student population, but also protect the disabled. And we had an individual who engaged in – I am very sympathetic with the college. And so you're right, Your Honor. It is a razor's edge that we have to walk. And in this circumstance where we had a student who threatened other students, who threatened the security guard, we suspended her for one quarter. But that, you see, gets to the question of accommodation. Correct. We're arguing now as to whether or not what she did was symptomatic of her disability. Correct. And which issue would Your Honor like me to address? Well, the issue that's presented to us is the connection between the symptoms that she exhibited and her disability. Absolutely. And on that point, the district judge says there's insufficient connection, therefore summary judgment you lose. Absolutely. And I'm inclined to disagree with the magistrate judge on that point. And I can appreciate that, Your Honor. But if we look at the cases, Dark and Humphrey were both summary judgment cases. Both of those cases had an extensive record about the disability and the manifestation, specifically in Humphrey. They're all much stronger. You're absolutely right. Let me ask you this. Excuse me. Let me let you finish answering the judge's question. I was just going to make the point that this case does not rise to the level of Dark and Humphrey. Now, Ms. Robinson cites Head v. Glacier on appeal and says that an affidavit, this affidavit is enough to get past summary judgment. This case does not come close to the record in Head v. Glacier. In that case, the rule was that you don't necessarily need medical evidence, but you need to have an affidavit that's not merely self-serving and one that contains sufficient detail. In that case, there was a meticulous discussion about sleep and the impact on the claimant's life, a detailed discussion about bipolar disorder and how it impacted memory and thinking, a detailed analysis about how the claimant had difficulty reading. So if we look at the record that was in Head v. Glacier and compare it with the record that is before this Court, we're not even in the same ballpark. Ms. Robinson has not met her evidentiary burden. I'm sympathetic to Ms. Robinson. I've gotten to know her pretty well over the years. But I'm asking this Court to apply the rules at summary judgment, to have her meet her burden on producing evidence that's not merely self-serving, not conclusory, but actually details. All she had to do was detail her disability, how it manifested itself, and say that on this day my bipolar disorder flared up and I had a violent outburst. She was unrepresented in the district court, correct? Correct, but pro se litigants still have they don't have a waiver to meet their evidentiary burdens. And that is. Counsel, I'm familiar with that. Okay. So that's all that Green River is asking this Court to do. Judge Deary, I apologize. You had a question. You've essentially answered it. Go ahead. Okay. I'd just like to remind. By the way, you say I've been involved in another context about the use of plaintiff's declarations to make their case on summary judgment. So while it's fresh in my mind, to say it's self-serving doesn't add anything. Because if it's the party affected, it's always going to be self-serving. You are correct that the party's declaration has to be specific. But take a look at Imeldi, our recent decision in that case. I dissented in that case. But to give you some instruction on what it takes to make a case if you're essentially the only witness who can come forward. I did read that case in the amended order that was out, and I think the opening sentence of the dissent was, bad facts make bad law, no facts make worse law. No, that was Judge Kaczynski on the denial of rehearing the bank. He was eloquent, but I like my dissent, too. And so the point is, Your Honor. There's an old saying from the old days in the Second Circuit, quote learned, but follow Gus. He's Gus. I would just like to say that on the affidavit in self-serving, I can appreciate that every affidavit is self-serving. But that's what the issue was in the Head v. Glacier case. And I would just encourage the Court to go back and read what was in the record of that case and what didn't constitute as self-serving, and look at that compared to what is in the record on this case, and you will see a divide that is too large to bridge. And if I may just say, on the stereotype, we can't create a society where we protect the disabled on the one hand, from stereotypes on the one hand, but then permit stereotyping for classification purposes on the other. That's mutually exclusive, and we cannot have that society. You just said a moment ago, all she had to do was to say on bipolar, maybe I wasn't taking my meds, I had a bad day, and so forth and so on. That's all she had to do to engage in a more productive dialogue with the school. By the time she got the letter, the letter was a letter of suspension. It didn't say we are considering a sanction, we are considering a suspension, if you have any medical information, bring us to it. The adverse action had been taken. So I'm not quite sure what you mean by all she had to do. If she had gone back, are you suggesting that if she had then gone back with something more than this report and her letter, that the college would have been prepared to undo what they had already done? Well, the first element of a reasonable accommodation claim is to state that an accommodation is possible. That's the burden on the claimant. Ms. Robinson took the invitation from Mr. Malroy and filed her complaint on January 18th, which is days before she contacted Disability Access Services, which was the entity Mr. Malroy told her to contact. And so she's triggering this lawsuit several days after the suspension letter takes place. Would you, before your time runs, address the 11th Amendment with respect to the state law claims? Absolutely. I think he's in trouble on due process, but I think you're in trouble on the state claims. Well, certainly this Court can address the legal arguments, which Ms. Robinson did not respond to in the underlying motion for summary judgment. But I would just say this. The test for waiver is a stringent one, and waiver must be unequivocal. The case that Ms. Robinson relies on is Hill. And if we look at what the state entity did in Hill compared to what Green River did in this case, again, we're in two different ballparks. The state entity filed two motions to dismiss without the immunity defense, filed written consent, moved to compel, moved to comply, attended a pretrial conference, filed a witness list and an exhibit list and jury instructions and a trial memorandum, and only raised 11th Amendment immunity on the first day of trial. Okay. And you never raised it? No. With respect to the state claims? Correct. We never raised it with respect to the state claims. That sounds even more unequivocal. They did raise it late, but they raised it. They did. But what I would like to say is, you know, quoting from Ms. Robinson's brief at 17, she concedes that the Court has the power to consider 11th Amendment defense sua sponte. That's not the point. Correct? That's not the point. If you're arguing that this is a different ballpark from Hill, I'm not sure you're trying to be in the park or out of the park. But if you never raise it, then you're leaving it to the Court to raise it. The issue that Ms. Robinson has is whether or not it can be raised sua sponte if it has been waived. And Green River's position is it was not waived because it was put. But you were talking about whether it was clear and unequivocal, and you were counting up all the factors that were present in Hill and they didn't raise it until the eve of trial. So just comparing ballparks and players here, you're down one if you didn't raise it at all. That's the point. I think it's a bad and slippery slope to get into parsing out which causes of action you can waive the 11th Amendment immunity on or not. And I believe I don't have the case in front of me, so I don't want to put any more out there other than to say that I'm pretty confident that the 11th Amendment applies absolutely or it doesn't apply at all. Okay. So if you waived it on the state ones, you're saying you got rescued because you raised it on the due process ones. And if we disagree with you on the other, then if you waived it on the state law, then you also lose it on the due process one. It's all or nothing. I'd say that it's all or nothing. If you think that it's waived, then it's waived altogether. But I would point to Inouye, Bleemeister, and Johnson, which again say that the purpose of waiver is whether or not there's a gaming of the judicial system. That's not the only purpose. Well, that's what Johnson says. Johnson says, are we trying to manipulate the judicial process, burden witnesses' time, burden the bench's time. Of course, that is one aspect, but it can't be the only one. Here's my problem. The Supreme Court sets up in Edelman v. Jordan that it sufficiently partakes of a subject matter jurisdiction objection that it may be raised at any time as an Eleventh Amendment objection, even on appeal. Correct. The Supreme Court has walked away from that. Correct. We've walked even further and even faster in Hill v. Blind Industries. Judge Kaczynski's opinion of Hill v. Blind Industry, I think, went beyond the Supreme Court law at that time, but nonetheless it's the law in this circuit that it is waivable. Now, the precise circumstances of the waiver and so on, there's room for argument, as we have just done, but it seems to me that the part of Edelman v. Jordan that says it can be raised at any date and it looks like a subject matter jurisdiction, that's the basis for sua sponte raising because that's what the federal district judge even has an obligation to do if you've got a subject matter jurisdiction, for example, federal question. But I'm not sure that the district court waiving the objection on your behalf is consistent with the current case law in this circuit. Well, that's Ms. Robinson's position, and that's in the reply brief at 17, where she says, quote, a court has the power to consider an Eleventh Amendment defense sua sponte. The issue is whether Green River has waived that defense, and I would just again say that Green River isn't attempting to game the system, burden the court, and Blymeister, they waited until after hearing a judicial reading before saying, hold on, things don't look good here, let's assert the defense. It is within five months of the, excuse me, four months of the plaintiff's motion for summary judgment and within five months of the complaint being filed and before any depositions or discovery is taking place. Thank you, Your Honor. Thank you. Thank you. It's clear that the panel has taken a lot of time to read the briefs and has a pretty full understanding of the issue, so I don't want to belabor the points any more than they've been talked about. Just going to the last point on the Eleventh Amendment immunity issue, the excerpt that he's quoting from my reply brief is in response to the argument that was posed by Green River in the answering brief, which is the court has blanket power to sua sponte, dismiss the claim on Eleventh Amendment immunity grounds. I have your brief in front of me. What page are we talking about? He just gave the page number and I forgot about that. Page 17. And so that language that was quoted was being re-quoted in the reply brief in response to Mr. Barone's argument in the answering brief, and what I said, which I think is consistent with what the panel just reiterated, was that in the Edelman case, there was that broad, what Judge Kaczynski referred to in Hill as sweeping language, that the court had sua sponte power to dismiss claims at any stage of the case, and as the panel has recognized, the Supreme Court and the Ninth Circuit has backed away from that, and in Hill made clear that notwithstanding that sua sponte language, which it characterized as dicta, that the core issue is has the government or the state arm made a choice to not assert that Eleventh Amendment early on in the proceeding? And here you've got a state claim that was asserted clearly on the pleadings, and the Washington Attorney General's Office on the other side, who, as I pointed out in my reply brief, asserts these defenses all the time and chose not to and never chose to assert it and fought the claim on its merits, and then the district court stepped in and granted summary judgment on Eleventh Amendment-based grounds. Okay. Thank you, Your Honors. Thank you. I thank both sides for your arguments. Yeah, very good arguments, and we appreciate pro bono counsel. In this case, I think all agree that it's good to have counsel. Oh, yeah. No, you've both done a very nice job, but because you're pro bono counsel, the court particularly wishes to thank you and to thank you for the good job that you did. Yeah. Yeah. Robinson v. Green River Community College, submitted.
judges: Dearie, Fletcher, Fisher